1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE CONDON, | Case No. 1:13-cv-00792-EPG-HC |
| Petitioner, | ORDER DENYING SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO CLOSE CASE, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| KIMBERLY HUGHES, | |
| Respondent. | |

Petitioner Julie Condon is a state prisoner, represented by counsel, proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her second amended petition for writ of habeas corpus, Petitioner raises the following claims for relief: (1) prosecutorial misconduct; (2) unlawful search and seizure; (3) ineffective assistance of counsel; (4) false testimony of a prosecution witness; (5) judicial bias; and (6) jury misconduct.

For the reasons discussed herein, the Court finds that denial of the second amended petition for writ of habeas corpus is warranted.

## I.

## BACKGROUND

In 2011, Petitioner was convicted after a jury trial in the Tuolumne County Superior Court of possession of heroin for sale (count I), transportation of heroin (count V), and transportation of methamphetamine (count VI). Petitioner also was convicted of the lesser

1   included offenses of possession of methamphetamine (count II), possession of hydrocodone,

2   morphine, and codeine (count III), and possession of diazepam (count IV). In a bifurcated

3   proceeding, Petitioner admitted the allegations that she had three prior drug offense convictions.

4   Petitioner was sentenced to an aggregate imprisonment term of fifteen years, eight months.

5   People v. Condon, No. F062801, 2012 WL 3222660, at *1 (Cal. Ct. App. Aug. 9, 2012).

6        On August 9, 2012, the California Court of Appeal, Fifth Appellate District, affirmed the

7   judgment. Condon, 2012 WL 3222660, at *4. The California Supreme Court denied Petitioner's

8   petition for review on November 14, 2012. (LDs[1] 3, 4). Thereafter, Petitioner filed a state

9   petition for writ of habeas corpus in the Riverside County Superior Court, which transferred the

10   petition to the Tuolumne County Superior Court (LDs 5, 6). The petition was denied on May 8,

11   2013. (ECF No. 18 at 5).[2] Petitioner then filed a state habeas petition in the California Court of

12   Appeal, Fifth Appellate District, which denied the petition on September 18, 2013. (LDs 7, 8).

13   Finally, Petitioner filed a state habeas petition in the California Supreme Court, which summarily

14   denied the petition on February 11, 2014. (LDs 9, 10).

15        On April 5, 2013, Petitioner initiated federal habeas proceedings in the Sacramento

16   Division of the Eastern District of California. On May 24, 2013, the matter was transferred to

17   this Court. (ECF No. 11). On July 25, 2013, the Court granted Petitioner's request to stay the

18   case pending exhaustion of claims in state court. (ECF No. 17). On March 26, 2014, the stay was

19   lifted, and Petitioner filed her second amended petition on April 23, 2014. (ECF Nos. 22, 26).

20   Respondent filed an answer to the second amended petition and Petitioner filed a traverse. (ECF

21   Nos. 35, 41). On July 21, 2015, the Court appointed counsel for Petitioner. (ECF No. 55). On

22   January 19, 2016, a supplemental traverse with respect to the ineffective assistance of counsel

23   claim was filed. (ECF No. 65). On March 21, 2016, Respondent filed a reply. (ECF No. 69). The

24   parties have consented to the jurisdiction of a United States magistrate judge to conduct all

25   proceedings in this case pursuant to 28 U.S.C. § 636(c). (ECF Nos. 14, 45).

26   ///

27

28   [1] "LD" refers to the documents lodged by Respondent on September 25, 2014. (ECF No. 42).
[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

# II.

## STATEMENT OF FACTS[3]

*Pretrial*

The trial court denied defense counsel's motion to unseal the search warrant because there was no exculpatory evidence. On May 4th, just prior to the commencement of the trial, defense counsel raised a discovery issue to the trial court. Defense counsel sent a discovery letter to the prosecutor on February 17th. The prosecutor replied on February 25th, explaining that defense counsel had received everything he was supposed to receive.

On April 14th, the prosecutor sent defense counsel a copy of a police report setting forth law enforcement surveillance activity that occurred on January 27th. The day before trial started, the prosecutor sent a witness list that included Kyna Kulp. In response to defense counsel's query concerning the identity of this witness, the prosecutor explained that Kulp was mentioned in the police report produced on April 14th.

In an exchange of emails just before trial, defense counsel asked the prosecutor whether Kulp had a rap sheet. Defense counsel conceded that he had received information regarding the surveillance of Condon by officers from the police report produced on April 14th. The prosecutor replied that Kulp had no rap sheet and she agreed to truthfully testify against Condon in exchange for not having charges brought against her. The first time that defense counsel learned that Kulp had a deal from the prosecution was at the beginning of the trial. The trial court ruled that there had been no withholding by the prosecutor of exculpatory evidence and denied the defense motion to continue the trial for further discovery.

*Trial*

On January 27th, the Tuolumne County Sheriff's Office Narcotics Team was conducting surveillance of Condon after receiving information that she was selling heroin. Detective Jarrod Pippin was part of the surveillance team. Pippin saw several transactions occur, and later contacted the people who had met with Condon in the parking lot of the post office, which was located directly across the street from Condon's home.

During the January 27th surveillance, a small silver sedan drove into the post office parking lot. Matthew Klunis and Kyna Kulp were seated in the car. Condon exited her home and walked toward the front of the post office. Klunis made the arrangements to meet with Condon to purchase heroin from her. When Condon left her home, Klunis exited his car and walked to the front of the post office, which was out of the view of Pippin and Kulp. After two minutes, Condon returned to her home and Klunis returned to his car. Klunis told Kulp that he had purchased heroin.

Pippin learned from the dispatcher that the license plate to Klunis's car had expired so he initiated a traffic stop. Klunis told Kulp to hide the heroin. Kulp was scared and put the heroin in her pants. After Pippin asked for the heroin several times, Kulp handed it to him. Pippin arrested Kulp and told her that if Kulp

---

[3] The Court relies on the California Court of Appeal's August 9, 2012 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

testified against Condon the case would be over that night. Kulp did not discuss her agreement with Pippin with anyone in the district attorney's office.

Pippin obtained a search warrant on Condon and her residence. On February 3rd, he saw Condon driving a white Volvo sedan and pulled her over in a parking lot. Pippin told Condon that he was going to search her because he had a search warrant. Condon exited the car and Pippin conducted a search. Pippin asked Condon if she had any needles. She replied that she was not sure if she had needles, but she did have heroin inside her bra. Pippin asked Condon to reach up her shirt, pull her bra away from her person, and let the contents fall out. Condon did so and several items fell from her shirt, including a large chunk of what appeared to be brown to black heroin, several packages of what appeared to be heroin, and a small, coin-sized baggie containing what appeared to be methamphetamine.

Later testing showed that Condon had 18.7 grams of heroin in these packages with a street value of $1,870. The large chunk of heroin alone weighed 15.2 grams. There was a small baggie that contained 1.9 grams of methamphetamine with a street value of $340. Both of these drugs were usable quantities. Another baggie contained a number of pills that were later identified as morphine sulfate, codeine, hydrocodone, and diazepam.

After her arrest, Pippen read Condon her *Miranda* rights. Pippen told Condon that she had a large quantity of drugs and he knew she had been dealing drugs. Pippen invited Condon to tell him about it. Condon replied that she had a history of controlled substance abuse, had been in a Proposition 36 program, and had been selling drugs, including heroine, methamphetamine, and pills. Condon would purchase a "piece," also known in the narcotics trade as a "Mexican piece," which is approximately just less than an ounce of heroin (25 grams), worth about $800. Condon also purchased an eight ball of methamphetamine at a time, or 3.5 grams, for $100.

Condon justified herself, saying that she was trying to take care of her family and she was a good person. Pippen replied that she was a "no-good piece of trash" who sold drugs to kids. Condon responded that the people she sold drugs to were already addicted to them.

Pippin testified that he believed Condon possessed heroin for sale not just based on the quantity alone, but also because of the packaging that she used. Pippin also believed that Condon possessed methamphetamine for sale based on the quantity in her possession. Pippin explained that drug dealers often maintain businesses to recycle and protect profits from drug trafficking, or maintain bank deposit profits for the storage of profits from drug trafficking. Pippen found no evidence of cash deposit boxes or sales records for her narcotics activity. Condon also did not have packaging materials or scales in her possession. Pippin stated that heavily addicted heroin addicts consume no more than 2.5 grams of heroin a day.

Condon testified that she was using at least six grams of heroin a day and also used methamphetamine. Condon denied selling either drug. She had purchased a piece of heroin the day before her arrest for $800. Condon's possession of both drugs was for her personal use. Condon denied selling any drugs to anyone and had no intention to sell drugs to anyone. Condon also denied telling Pippin that she sold heroin, methamphetamine, or pills.

Condon, 2012 WL 3222660, at *1–3 (footnotes omitted).

**III.**

**STANDARD OF REVIEW**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Tuolumne County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court

1  decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that
2  'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent
3  decisions"; otherwise, there is no clearly established Federal law for purposes of review under
4  AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742,
5  754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125,
6  123 (2008)).

7       If the Court determines there is clearly established Federal law governing the issue, the
8  Court then must consider whether the state court's decision was "contrary to, or involved an
9  unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A
10 state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at
11 a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state
12 court decides a case differently than [the Supreme Court] has on a set of materially
13 indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an
14 unreasonable application of[] clearly established Federal law" if "there is no possibility
15 fairminded jurists could disagree that the state court's decision conflicts with [the Supreme
16 Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state
17 court's ruling on the claim being presented in federal court was so lacking in justification that
18 there was an error well understood and comprehended in existing law beyond any possibility for
19 fairminded disagreement." Id. at 103.

20      If the Court determines that the state court decision was "contrary to, or involved an
21 unreasonable application of, clearly established Federal law," and the error is not structural,
22 habeas relief is nonetheless unavailable unless it is established that the error "had substantial and
23 injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)
24 (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776
25 (1946)).

26      The AEDPA requires considerable deference to the state courts. The Court looks to the
27 last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain,
28 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v.

1  Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state

2  court and the state court has denied relief, it may be presumed that the state court adjudicated the

3  claim on the merits in the absence of any indication or state-law procedural principles to the

4  contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but

5  provides no reasoning to support its conclusion, a federal habeas court independently reviews the

6  record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel,

7  709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of

8  the constitutional issue, but rather, the only method by which we can determine whether a silent

9  state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th

10  Cir. 2003). The federal court must review the state court record and "must determine what

11  arguments or theories . . . could have supported, the state court's decision; and then it must ask

12  whether it is possible fairminded jurists could disagree that those arguments or theories are

13  inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at

14  102.

**IV.**

**REVIEW OF CLAIMS**

**A.  Prosecutorial Misconduct**

In her first claim for relief, Petitioner asserts that the prosecution engaged in misconduct

by failing to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963), and by

the late disclosure of a police report and the fact that a prosecution witness would be testifying

for immunity. (ECF No. 26 at 5, 10). Respondent argues that the state court's denial of this claim

was reasonable under controlling Supreme Court precedent. (ECF No. 35 at 16).

This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate

District, which denied the claim in a reasoned opinion. (LDs 1, 2). The claim was also raised in

the petition for review, which was summarily denied by the California Supreme Court. (LDs 3,

4). Generally, federal courts "look through" summary denials and review the last reasoned state

court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

*///*

In denying the prosecutorial misconduct claim, the California Court of Appeal stated:

Condon's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*Wende, supra,* 25 Cal.3d 436.) The opening brief also includes the declaration of appellate counsel indicating that Condon was advised she could file her own brief with this court. Appellant's counsel stated in the brief that appellant requests this court to address whether the prosecutor engaged in misconduct by waiting until the eve of trial to disclose to the defense that witness Kyna Kulp had received a promise not to have felony charges brought against her in exchange for her promise to testify against Condon.

. . .

Penal Code section 1054.1 mandates that the prosecutor shall disclose to the defendant and to the defendant's counsel all: names and addresses of witnesses the prosecution intends to call at trial, statements by defendants, relevant evidence seized as part of the investigation of the charged offenses, felony convictions of witnesses, and exculpatory evidence. With respect to the constitution, the prosecution must disclose evidence that is favorable to the defendant and material on either guilt or punishment. (Pen.Code, § 1054.1; *People v. Superior Court* (*Meraz* ) (2008) 163 Cal.App.4th 28, 47.) Evidence is favorable if it either helps the defendant or hurts the prosecution. (*Id.* at p. 51.)

It appears that the witness in question was known to the defense prior to trial when the prosecutor produced an additional police report. Presumably the information in the police report identified Kulp and the facts surrounding her detention by investigators. Kulp did not provide any exculpatory information for the defense. The defense was aware that law enforcement had conducted surveillance of Condon and obtained a search warrant prior to her arrest. Even if we presume the witness list was produced later than it should have been, and that the defense did not learn of a deal not to prosecute Kulp in exchange for her testimony until the beginning of the trial, there is nothing in this record to demonstrate that the delay prejudiced Condon or in any way impeded her right to a fair trial.

After independent review of the record, we have concluded there are no reasonably arguable legal or factual issues.

Condon, 2012 WL 3222660, at *3–4.

A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. Brady, 373 U.S. at 87. Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. United States v. Agurs, 427 U.S. 97, 112 (1976). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v.

1  Bagley, 473 U.S. 667, 682 (1985). "A reasonable probability is a probability sufficient to

2  undermine confidence in the outcome." Id.

3        The Court finds that the California Court of Appeal's decision was not contrary to, or an

4  unreasonable application of, clearly established federal law, nor was it based on an unreasonable

5  determination of fact. Here, the prosecution disclosed to the defense on the eve of trial that Kulp

6  had received a promise not to have felony charges brought against her in exchange for her

7  testimony against Petitioner. Petitioner's counsel was aware of this information at the time of

8  trial and utilized this information during his cross-examination of Kulp and in closing argument.

9  (1 RT[4] 201–03, 2 RT 325–26). Petitioner fails to demonstrate how knowledge of this information

10  at an earlier time would have been favorable to the defense or that there was a reasonable

11  probability that the result of the proceeding would have been different. As Petitioner has not

12  established that she suffered any prejudice as a result of the belated disclosure, she has not

13  shown that the evidence was material as required by Bagley. See Bagley, 473 U.S. at 682. The

14  state court's decision denying the prosecutorial misconduct claim was not "so lacking in

15  justification that there was an error well understood and comprehended in existing law beyond

16  any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is

17  not entitled to habeas relief on her first claim, and it must be denied.

18        **B.  Fourth Amendment Claim**

19        In her second claim for relief, Petitioner asserts that the search warrant was not supported

20  by probable cause and that it was deficient for failing to particularize all places to be searched

21  and items to be seized, in violation of the Fourth Amendment. (ECF No. 26 at 5, 12). Petitioner

22  contends that the two confidential informants upon whom police relied to establish probable

23  cause were not credible and were not tested for reliability. (Id. at 12). Respondent argues that this

24  claim is procedurally defaulted, and in any event, fails to state grounds for federal habeas relief.

25  (ECF No. 35 at 17).

26  ///

27  ///

28  ───────────────
[4] "RT" refers to the Reporter's Transcript lodged by Respondent on September 25, 2014. (ECF No. 42).

1.  <u>Procedural Default</u>

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729–30 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. <u>Id.</u> at 730–32. In determining whether a state procedural ruling bars federal review, the Court looks to the "last reasoned opinion on the claim." <u>Ylst</u>, 501 U.S. at 804. "Where there has been one reasoned state judgment rejecting a federal claim, [the Court presumes] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground" unless "strong evidence can refute" the presumption. <u>Id.</u> at 803, 804.

"[A] procedural default based on an ambiguous order that does not clearly rest on independent and adequate state grounds is not sufficient to preclude federal collateral review." <u>Valerio v. Crawford</u>, 306 F.3d 742, 774 (9th Cir. 2002) (en banc) (internal quotation marks omitted) (quoting <u>Morales v. Calderon</u>, 85 F.3d 1387, 1392 (9th Cir.1996)). Where a state court denies a habeas petition containing multiple claims, does not "specify which claims were barred for which reasons," <u>Valerio</u>, 306 F.3d at 775, and "affords no basis for choosing between a state law ground that would bar federal review, and one that would not, that decision cannot bar federal review," <u>Koerner v. Grigas</u>, 328 F.3d 1039, 1052 (9th Cir. 2003).

Here, the unlawful search and seizure claim was raised in all of Petitioner's state habeas petitions. The Tuolumne County Superior Court denied the petition, stating with respect to all of Petitioner's claims except ineffective assistance of counsel:

> Petitioner's right to proceed by way of habeas is limited by the *Dixon* and *Waltreus* rules. The *Dixon* rule generally prohibits raising an issue in a post appeal habeas petition when that issue was not, but could have been, raised on appeal. (*In re Dixon* (1953) 41 Cal.2d 756, 759.) If a claim was raised on direct appeal, the *Waltreus* rule provides that the issue may not be reasserted in a habeas petition, absent a claim of fundamental constitutional error, striking at the heart of the trial process, or if the trial court lacked jurisdiction or acted in excess of its jurisdiction, or if the petitioner is affected by the creation of a new rule of law. *Waltreus* provides that habeas corpus generally cannot serve as a second appeal. (*In re Waltreus* (1965) 62 Cal.2d 218, 225, cert. denied (1965) 382 U.S. 853.)

1  (ECF No. 18 at 3–4). The California Court of Appeal, Fifth Appellate District, denied the
2  petition because it was "conclusional, unaccompanied by all reasonably available documentary
3  items needed to review her claims, and many of her claims could have been, but were not, raised
4  on appeal." (LD 8). The California Supreme Court summarily denied the petition. (LD 10).

5        Generally, federal courts "look through" summary denials and review the last reasoned
6  state court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806. Although
7  Respondent relies on the Tuolumne County Superior Court's decision in support of the
8  procedural default argument, the last reasoned opinion is the California Court of Appeal's denial
9  of Petitioner's state habeas petition. See Ylst, 501 U.S. at 802 (defining an unexplained order as
10 one "whose text or accompanying opinion does not disclose the reason for the judgment");
11 Lambright v. Stewart, 241 F.3d 1201, 1205 (9th Cir. 2001) ("The district court incorrectly based
12 its conclusion that it could not consider Lambright's constitutional claim on the state court's
13 first, rather than last, reasoned opinion . . ."). The California Court of Appeal denied the petition
14 because it was "conclusional, unaccompanied by all reasonably available documentary items
15 needed to review her claims, and *many of her claims* could have been, but were not, raised on
16 appeal." (LD 8) (emphasis added). The California Court of Appeal failed to "specify which
17 claims were barred for which reasons,"[5] Valerio, 306 F.3d at 775, and Respondent has failed to
18 demonstrate that a denial of a "conclusional" petition "unaccompanied by all reasonably
19 available documentary items needed to review her claims" is an independent and adequate state
20 ground that precludes federal review. Accordingly, Petitioner's Fourth Amendment claim is not
21 procedurally defaulted. As the California Court of Appeal did not reach the merits of the claim,
22 the claim is reviewed *de novo*. Cone, 556 U.S. at 472.

23 *///*

---

24 [5] The Court notes that review of the Tuolumne County Superior Court's decision does not resolve the ambiguity of
25 the California Court of Appeal's order. See Koerner, 328 F.3d at 1052 ("Under some circumstances, a federal court
will be able to resolve an ambiguous order . . . if the order affirms a previous lower court order that relies on the
26 same grounds and specifies which grounds are applicable to which claims . . . ."). The Tuolumne County Superior
Court denied habeas relief because "Petitioner's right to proceed by way of habeas is limited by the Dixon and
27 Waltreus rules," without specifying which rule applied to which claims. (ECF No. 18 at 3). The Ninth Circuit has
held that a state court order that did not specify which claims were rejected under Waltreus and which were rejected
28 under Harris/Dixon does not preclude federal habeas review. Calderon v. United States District Court (Bean), 96
F.3d 1126, 1131 (9th Cir. 1996).

2.   <u>Analysis</u>

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976). <u>See Newman v. Wengler</u>, 790 F.3d 876, 881 (9th Cir. 2015) (holding <u>Stone</u> survived enactment of the AEDPA). The only inquiry this Court can make is whether Petitioner had a full and fair opportunity to litigate her claim. <u>See Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (9th Cir. 1996) ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did, in fact, do so, or even whether the claim was correctly decided.") (citations omitted).

In this case, Petitioner's Fourth Amendment claim could have been litigated in the state trial court, but defense counsel failed to timely move to traverse the search warrant and suppress evidence. (CT[6] 32; 1 RT 100, 102, 106–07). Petitioner also could have raised her claim in her direct appeal. On January 12, 2012, Petitioner's appellate counsel filed a <u>Wende</u>[7] brief and a declaration in which she stated that she had advised Petitioner that Petitioner could file a supplemental brief within thirty days of the filing of the opening brief. On January 11, 2012, the California Court of Appeal invited Petitioner to submit additional briefing, but Petitioner failed to do so. <u>Condon</u>, 2012 WL 3222660, at *3.

The Court finds that the state courts provided Petitioner with a "full and fair opportunity to litigate" her Fourth Amendment claim. <u>Stone</u>, 428 U.S. at 494. <u>See Gordon v. Duran</u>, 895 F.2d 610, 613–14 (9th Cir. 1990) (holding that the availability to file a suppression motion pursuant to California Penal Code section 1538.5 provided opportunity in state court for full and fair litigation of Fourth Amendment claim). Accordingly, Petitioner is not entitled to habeas relief on her second claim and it must be denied.

///

---

[6] "CT" refers to the Clerk's Transcript lodged by Respondent on September 25, 2014. (ECF No. 42).
[7] <u>People v. Wende</u>, 25 Cal. 3d 436 (1979). Appellate counsel can file a <u>Wende</u> brief when she finds no legitimate issues for appeal. When a <u>Wende</u> brief is filed, the court must undertake an independent review of the record for valid claims. <u>Hebbe v. Pliler</u>, 627 F.3d 338, 340 n.1 (9th Cir. 2010).

**C.  Ineffective Assistance of Counsel**

In her third claim for relief, Petitioner claims that her trial counsel was ineffective for: (1) failing to review police reports and file pretrial motions to suppress; (2) proceeding to trial unprepared; (3) failing to inquire into three potential conflicts of interest; and (4) failing to review the presentence report with Petitioner. (ECF No. 26 at 6, 15). Petitioner also claims ineffective assistance of appellate counsel. (ECF No. 65 at 16). Respondent argues that the state courts reasonably denied Petitioner's various ineffective assistance claims. (ECF No. 35 at 19).

1.  Applicable Standard of Review

Ineffective assistance of counsel was raised in all of Petitioner's state habeas petitions. The Tuolumne County Superior Court denied the ineffective assistance of counsel claim on the merits. The California Court of Appeal, Fifth Appellate District, denied the petition because it was "conclusional, unaccompanied by all reasonably available documentary items needed to review her claims, and many of her claims could have been, but were not, raised on appeal." (LD 8). The California Supreme Court summarily denied the petition. (LD 29). Generally, federal courts "look through" summary denials and review the last reasoned state court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806. Both Petitioner and Respondent's briefs look to the Tuolumne County Superior Court's decision. However, this Court has not been presented with authority that supports looking through a higher court's procedural denial of a habeas petition to a lower court's merits denial. As discussed in section IV(B)(1), *supra*, the California Court of Appeal's denial of Petitioner's state habeas petition is the last reasoned opinion. As the California Court of Appeal did not reach the merits of the ineffective assistance of counsel claim, it is reviewed *de novo*. Cone, 556 U.S. at 472.

2.  Strickland Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel

1  made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

2  defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance

3  is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within

4  the "wide range" of reasonable professional assistance. Id. at 687. A reviewing court should

5  make every effort "to eliminate the distorting effects of hindsight, to reconstruct the

6  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

7  perspective at that time."   Id. at 689. To establish prejudice, a petitioner must demonstrate "a

8  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

9  would have been different. A reasonable probability is a probability sufficient to undermine

10 confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result

11 would have been different. . . . The likelihood of a different result must be substantial, not just

12 conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

13          3.   Failure to Review Police Report and Challenge Search Warrant

14         Petitioner asserts that trial counsel was ineffective for failing to timely review a police

15 report that appeared to describe the arrests and identities of confidential informants and for

16 failing to challenge the search warrant. (ECF No. 26 at 15). Petitioner argues that if counsel had

17 reviewed the police report, counsel could have challenged the search warrant by filing a motion

18 to traverse the search warrant and suppress evidence on the basis that the officer falsely stated in

19 the affidavit that the confidential informants were reliable. (ECF No. 65 at 11, 14).

20         In order to establish ineffective assistance of counsel based on defense counsel's failure

21 to litigate a Fourth Amendment issue, petitioner must show that: (1) the overlooked motion to

22 suppress would have been meritorious, and (2) there is a reasonable probability that the jury

23 would have reached a different verdict absent the introduction of the unlawful evidence. Ortiz–

24 Sandoval v. Clarke, 323 F.3d 1165, 1170 (9th Cir. 2003). See also Styers v. Schriro, 547 F.3d

25 1026, 1030 n.5 (9th Cir. 2008) ("Generally, a defendant claiming ineffective assistance of

26 counsel for failure to file a particular motion must not only demonstrate a likelihood of

27 prevailing on the motion, but also a reasonable probability that the granting of the motion would

28 have resulted in a more favorable outcome in the entire case."). A search warrant "cannot be

issued but upon probable cause, supported by affidavit." Cal. Penal Code § 1525. California courts apply Fourth Amendment standards in determining the sufficiency of the affidavit supporting a search warrant and in deciding what remedy may be available. Humphries v. Appellate Division, 29 Cal. 4th 569, 573 (2002); People v. Ayala, 23 Cal. 4th 225, 254–55 (2000). To prevail on a motion to traverse a warrant, a defendant must show: (1) the supporting "affidavit included a false statement made 'knowingly and intentionally, or with reckless disregard for the truth,' and (2) 'the allegedly false statement was necessary to the finding of probable cause.'" People v. Hobbs, 7 Cal. 4th 948, 974 (1994) (quoting Franks v. Delaware, 438 U.S. 154, 155–56 (1978)).

Having considered the parties' written submissions, oral arguments at the hearing, and the sealed affidavit in support of the search warrant,[8] the Court finds that counsel's performance did not prejudice the defense. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance with respect to trial counsel's failure to timely review the police report and challenge the search warrant.

### 4. Decision to Proceed to Trial Unprepared

Petitioner asserts that trial counsel was ineffective for deciding to proceed to trial after counsel's request for a continuance was denied. (ECF No. 26 at 6). Petitioner argues that trial counsel made an unethical decision to proceed to trial without a defense instead of withdrawing as counsel. (Id. at 15). Petitioner does not demonstrate that a motion to withdraw as counsel raised on the morning of trial would have been granted. Further, a defense was proffered at trial. Trial counsel argued, and Petitioner testified, that the drugs in Petitioner's possession were for her personal use. (1 RT 235–36, 242; 2 RT 324–25, 336–39). The basis for trial counsel's request for a continuance was to further investigate Kulp and Klunis in order to challenge the warrant. (1 RT 94–103). As stated in section IV(C)(3), *supra*, counsel's failure to challenge the search warrant did not prejudice Petitioner since the warrant was supported by probable cause. Thus,

---

[8] "Federal courts sitting in habeas may consider the entire state-court record, not merely those materials that were presented to state appellate courts." McDaniels v. Kirkland, 813 F.3d 770, 780 (9th Cir. 2015). Moreover, here, because the state court did not adjudicate this claim on the merits, § 2254(d)(1) does not apply and there is no restriction on the Court considering the sealed search warrant affidavit in determining whether Petitioner is entitled to habeas relief on her ineffective assistance claim. See Crittenden v. Chappell, 804 F.3d 998, 1010 (9th Cir. 2015).

1   Petitioner has failed to demonstrate that she was prejudiced by trial counsel's failure to move to

2   withdraw from the case and his decision to proceed to trial without having sufficiently

3   investigated Kulp, Klunis, and the search warrant. Accordingly, the Court finds that Petitioner is

4   not entitled to habeas relief for ineffective assistance with respect to trial counsel's failure to

5   withdraw and decision to proceed with trial after the request for a continuance was denied.

6        5.  <u>Conflicts of Interest</u>

7        Petitioner asserts that trial counsel was ineffective for failing to inquire into the following

8   three alleged conflicts of interest: trial counsel knew Matthew Klunis, trial counsel had a heavy

9   caseload and was unable to diligently defend Petitioner, and the presentence report was prepared

10  by the probation officer of Petitioner's brother. (ECF No. 26 at 15–16).

11       The Supreme Court has held that "[i]n order to establish a violation of the Sixth

12  Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict

13  of interest adversely affected his lawyer's performance." <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348

14  (1980). Here, Petitioner has not demonstrated that an actual conflict of interest existed or that

15  any alleged conflict of interest adversely affected her trial counsel's performance. Petitioner

16  provides no evidence to support her allegation that trial counsel may have represented Klunis,

17  and Petitioner fails to show how this alleged conflict of interest actually affected the adequacy of

18  counsel's representation. Petitioner also has not shown how her counsel's large workload

19  adversely affected counsel's performance. Petitioner does not point to specific acts or omissions

20  that may have resulted from counsel's heavy workload. <u>See</u> <u>Strickland</u>, 466 U.S. at 690; <u>Woods</u>

21  <u>v. Sinclair</u>, 764 F.3d 1109, 1132 (9th Cir. 2014) (Petitioner "must point to specific acts or

22  omissions that may have resulted from counsel's inexperience and other professional

23  obligations" because "these alleged deficiencies . . . do not, in and of themselves, amount to a

24  <u>Strickland</u> violation.").

25       Petitioner alleges that counsel failed to investigate the possible conflict of interest of the

26  probation officer. The fact that the probation officer who wrote Petitioner's presentence report

27  was her brother's probation officer does not establish that the probation officer had a conflict of

28  interest. Counsel's failure to further investigate this issue does not constitute deficient

16

1   performance. In support of her claim that the probation officer had a conflict of interest,

2   Petitioner alleges that the presentence report erroneously stated that Petitioner was on felony

3   probation at the time of her arrest and that she transported methamphetamine into the state of

4   California. (ECF No. 26 at 16). However, the presentence report does not state that Petitioner

5   was on felony probation at the time of her arrest. (CT 92–106). Additionally, the presentence

6   report set forth Petitioner's prior convictions, which correctly included a conviction for

7   transportation in 2005.[9] (Id. at 97). Petitioner also appears to allege that the recommendation in

8   the presentence report is higher than what the probation officer told Petitioner she would

9   recommend. (ECF No. 26 at 16). Petitioner does not establish that the higher recommendation is

10  unlawful or erroneous. Thus, the probation officer allegedly increasing the recommended

11  sentence does not establish that the probation officer had a conflict of interest, and trial counsel

12  was not deficient for failing to investigate this issue.

13      Based on the foregoing, the Court finds that Petitioner is not entitled to habeas relief for

14  ineffective assistance with respect to these alleged conflicts of interests.

15          6.   Failure to Review the Presentence Report with Petitioner

16      Petitioner asserts her trial counsel was ineffective for failing to review the presentence

17  report with her. (ECF No. 26 at 15). Petitioner alleges that she informed him that it was not

18  accurate. (Id. at 16). As discussed in section IV(C)(5), *supra*, the presentence report did not

19  contain the errors alleged by Petitioner, and Petitioner fails to establish how "there is a

20  reasonable probability that . . . the result of the proceeding would have been different" if counsel

21  had reviewed the presentence report with Petitioner. Strickland, 466 U.S. at 694. Accordingly,

22  the Court finds that Petitioner is not entitled to habeas relief for ineffective assistance with

23  respect to trial counsel's failure to review the presentence report with Petitioner.

24          7.   Ineffective Assistance of Appellate Counsel

25      Petitioner asserts that appellate counsel was ineffective for filing a Wende brief instead of

---

26   [9] The Court notes that at trial Petitioner also expressed confusion about her 2005 conviction of transportation of
methamphetamine, but ultimately did not deny her transportation conviction after clarification from the prosecutor.
27   (2 RT 355–58). Petitioner also admitted the transportation conviction as a prior conviction in a bifurcated
proceeding, but preserved the issue of whether it could be alleged as a prior conviction for purposes of enhanced
28   sentencing because it was allegedly dismissed through successful completion of drug court. (2 RT 355–56).

challenging Petitioner's convictions for both transportation and simple possession, which Petitioner argues is necessarily included in the offense of transportation. (ECF No. 65 at 16). Petitioner argues that dismissal of the possession charge would have reduced her sentence. (Id.). Under California law, "only a statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding. An offense that may be a lesser included offense because of the specific nature of the accusatory pleading is not subject to the same bar." People v. Reed, 38 Cal. 4th 1224, 1229 (2006) (internal quotation marks omitted) (quoting People v. Scheidt, 231 Cal. App. 3d 162, 165–66 (Cal. Ct. App. 1991)). In People v. Rogers, the California Supreme Court recognized that "[a]lthough possession is commonly a circumstance tending to prove transportation, it is not an essential element of that offense and one may 'transport' marijuana or other drugs even though they are in the exclusive possession of another." 5 Cal. 3d 129, 134 (1971). Based on Reed and Rogers, challenging the transportation and simple possession convictions as unlawful multiple convictions was not a meritorious issue with a reasonable probability of success. Therefore, appellate counsel was not ineffective for failing to raise this issue. See Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless.") (citing Knowles v. Mirzayance, 556 U.S. 111, 127 (2009)). Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance with respect to appellate counsel's decision to file a Wende brief.

### D.  False Testimony

In her fourth claim for relief, Petitioner asserts that the officer testified falsely that he witnessed a drug transaction between Klunis and Petitioner and that Petitioner admitted to selling drugs to minors. (ECF No. 26 at 6, 18). Respondent argues that this claim is procedurally defaulted, and in any event, is facially insufficient to warrant federal habeas relief. (ECF No. 35 at 21).

This claim was raised in all three of Petitioner's state habeas petitions. As discussed in section IV(B)(1), *supra*, the last reasoned opinion is the California Court of Appeal's denial of Petitioner's state habeas petition and a "procedural default based on an ambiguous order that

1   does not clearly rest on independent and adequate state grounds is not sufficient to preclude

2   federal collateral review." <u>Valerio</u>, 306 F.3d at 774 (9th Cir. 2002) (internal quotation marks

3   omitted) (quoting <u>Morales</u>, 85 F.3d at 1392). Accordingly, this claim is not procedurally

4   defaulted. As the California Court of Appeal did not reach the merits of the claim, the claim is

5   reviewed *de novo*. <u>Cone</u>, 556 U.S. at 472.

6        The prosecution's knowing use of perjured testimony to obtain a conviction can violate

7   due process. <u>See</u> <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959). "Under this clearly established

8   Supreme Court precedent, the petitioner must show that (1) the testimony (or evidence) was

9   actually false, (2) the prosecution knew or should have known that the testimony was actually

10  false, and (3) that the false testimony was material." <u>Soto v. Ryan</u>, 760 F.3d 947, 958 (9th Cir.

11  2014) (citing <u>United States v. Zuno-Arce</u>, 339 F.3d 886, 889 (9th Cir. 2003)). In assessing

12  materiality, the Court must determine whether "there is 'any reasonable likelihood that the false

13  testimony could have affected the judgment of the jury.'" <u>Id.</u> (quoting <u>Hayes v. Brown</u>, 399 F.3d

14  972, 978 (9th Cir. 2005)).

15       Contrary to Petitioner's assertions, the officer did not testify at trial that he witnessed a

16  drug transaction between Klunis and Petitioner. In pertinent part, the officer testified as follows:

17
18
   [PROSECUTOR]: Q. Okay. And what, if anything sparked your interest that evening when you had your surveillance setup of her home?

19
20
21
22
23
24
[OFFICER]: A. As I was monitoring her—her residence, the post office was closed at that time. I observed a small silver sedan pull into the post office parking lot, like I stated, directly across the street from Miss Condon's house. There was two people in that car, a male driver and a female passenger. They remained in their vehicle for a few minutes. I saw Miss Condon exit her residence and walk across the street. At the same time, she was walking across the street, the driver of the small silver car exited his vehicle and walked towards the front of the post office where Miss Condon had walked.

25  Q. Okay. What did you see next?

26
27
A. *They were out of my sight while they were in the front of the post office for approximately two minutes.* After those two minutes had passed, both of them walked back where they had come from, Miss Condon to her house and the male subject back to his vehicle.

28  (1 RT 151) (emphasis added).

1    In addition, the officer did not testify at trial that Petitioner in fact sold drugs to children.

2   Rather, in describing his conversation with Petitioner after her arrest, the officer testified that he

3   "told her that she was a no-good piece of trash and that she sells heroin to kids." (1 RT 144). The

4   officer testified that in response to his accusation, Petitioner stated, "They were already addicted

5   when I sold to them." (1 RT 145). On cross-examination, the officer testified that Petitioner

6   never used the word "kids." (1 RT 174). The officer did not testify at trial that Petitioner in fact

7   sold heroin to children; he testified about his accusation that she sold heroin to kids and

8   Petitioner's response to his accusation. Petitioner has not provided any support, other than her

9   own testimony at trial, that any comment about her selling drugs to children was actually false.

10   Moreover, Petitioner has failed to show that the prosecutor knew or should have known this

11   comment to be false. Accordingly, Petitioner is not entitled to habeas relief on her fourth claim

12   and it must be denied.

13       **E.  Judicial Bias**

14       In her fifth claim for relief, Petitioner asserts that the trial court was biased. (ECF No. 26

15   at 6). In support of this claim, Petitioner raises the following trial court actions: denial of the

16   defense's request for a continuance, denial of disclosing the sealed affidavit that supported

17   probable cause for the search warrant, denial of an *in camera* hearing regarding the validity of

18   the search warrant, denial of the defense's motion for new trial and 1118.2 motion, failure to

19   inquire into conflicts of interest, imposing an aggravating sentence and raising bail based on

20   unproven allegations, and making derogatory remarks regarding Petitioner's appearance. (Id. at

21   6, 20). Respondent argues that this claim is procedurally defaulted, and in any event, facially

22   insufficient to warrant federal habeas relief. (ECF No. 35 at 21).

23       This claim was raised in all three of Petitioner's state habeas petitions. As discussed in

24   section IV(B)(1), *supra*, the last reasoned opinion is the California Court of Appeal's denial of

25   Petitioner's state habeas petition and a "procedural default based on an ambiguous order that

26   does not clearly rest on independent and adequate state grounds is not sufficient to preclude

27   federal collateral review." Valerio, 306 F.3d at 774 (internal quotation marks omitted) (quoting

28   Morales, 85 F.3d at 1392). Accordingly, this claim is not procedurally defaulted. As the

1   California Court of Appeal did not reach the merits of the claim, the claim is reviewed *de novo*.

2   Cone, 556 U.S. at 472.

3          The Supreme Court has long recognized that due process "clearly requires a 'fair trial in a

4   fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome

5   of his particular case." Bracy v. Gramley, 520 U.S. 899, 904–05 (1997) (quoting Withrow v.

6   Larkin, 421 U.S. 35, 46 (1975)). "The Constitution requires recusal where 'the probability of

7   actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'"

8   Hurles v. Ryan, 752 F.3d 768, 788 (9th Cir. 2014) (quoting Withrow, 421 U.S. at 47). Thus, to

9   establish a due process violation Petitioner need not prove actual bias, just an intolerable risk of

10  bias. Hurles, 752 F.3d at 789. However, Petitioner must "overcome a presumption of honesty

11  and integrity in those serving as adjudicators." Withrow, 421 U.S. at 47. The Supreme Court has

12  held that in the absence of some extrajudicial source of bias or partiality, "judicial rulings alone

13  almost never constitute a valid basis for a bias or partiality motion" and "judicial remarks during

14  the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or

15  their cases ordinarily do not support a bias or partiality challenge . . . [unless] they display a

16  deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v.

17  United States, 510 U.S. 540, 555 (1994). See Larson v. Palmateer, 515 F.3d 1057, 1067 (9th Cir.

18  2008) (applying Liteky in § 2254 habeas proceeding governed by the AEDPA); United States v.

19  Sypolt, 346 F.3d 838, 840 (8th Cir. 2003) (If a petitioner's "claim fails to pass muster under

20  § 455 [federal recusal statute] . . . it cannot survive the more rigorous standards required of a

21  claim under the due process clause.").

22         Here, the trial court's actions Petitioner sets forth to support her claim for judicial bias all

23  involve judicial rulings and remarks made during the course of trial. Petitioner does not

24  demonstrate that the trial court's rulings were the product of some extrajudicial source of bias or

25  partiality. Upon review of the record, the trial court's remarks challenged by Petitioner do not

26  display a deep-seated favoritism or antagonism that would make fair judgment impossible. (1 RT

27  184–88). Based on the foregoing, Petitioner has failed to "overcome [the] presumption of

28  honesty and integrity in those serving as adjudicators." Withrow, 421 U.S. at 47. Accordingly,

1   Petitioner is not entitled to habeas relief on her fifth claim and it must be denied.

2   **F.  Jury's Failure to Follow Court Instruction**

3   In her sixth claim for relief, Petitioner asserts that the jury failed to follow the court's

4   instructions and convicted her of possession of heroin for sale without full review of all the facts.

5   (ECF No. 26 at 7, 24). In the answer, Respondent does not address this claim. This claim was

6   raised in all three of Petitioner's state habeas petitions. As discussed in section IV(B)(1), *supra*,

7   the last reasoned opinion is the California Court of Appeal's denial of Petitioner's state habeas

8   petition. As the California Court of Appeal did not reach the merits of the claim, the claim is

9   reviewed *de novo*. Cone, 556 U.S. at 472.

10  Petitioner alleges that the jury did not follow the court's instructions and failed to fully

11  review all the evidence. The jury in Petitioner's case was instructed with a modified version of

12  CALCRIM No. 301, which provided that "testimony of only one witness can prove any fact.

13  Before you conclude that the testimony of one witness proves a fact, you should carefully review

14  all the evidence." (CT 48). Petitioner argues that because the jury only requested the testimony

15  of Kulp during deliberations and did not request the testimony of other witnesses, the jury failed

16  to fully review all the evidence. The Court finds this argument unpersuasive because the fact that

17  the jury did not request the testimony of other witnesses does not necessarily imply that the jury

18  failed to fully review all the evidence. "A jury is presumed to follow [the court's] instructions,"

19  and Petitioner has failed to overcome this presumption. Weeks v. Angelone, 528 U.S. 225, 234

20  (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

21  The Court "must construe *pro se* habeas filings liberally." Allen v. Calderon, 408 F.3d

22  1150, 1153 (9th Cir. 2005) (citing Maleng v. Cook, 490 U.S. 488 (1989)). To the extent that

23  Petitioner asserts that there was insufficient evidence to support her conviction for possession of

24  heroin for sale, the Court finds that Petitioner is not entitled to habeas relief. The Supreme Court

25  has held that when reviewing a sufficiency of the evidence claim, a court must determine

26  whether, viewing the evidence and the inferences to be drawn from it in the light most favorable

27  to the prosecution, any rational trier of fact could find the essential elements of the crime beyond

28  a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced

1   with a record of historical facts that supports conflicting inferences must presume—even if it

2   does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in

3   favor of the prosecution, and must defer to that resolution." Id. at 326.

4        Petitioner argues that Kulp's testimony was hearsay, Kulp never witnessed any

5   transaction, and Kulp was not credible because she participated in the crime and was given

6   immunity. (ECF No. 26 at 24). "[U]nder Jackson, the assessment of credibility of witnesses is

7   generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995). See also

8   Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are . . .

9   entitled to near-total deference under Jackson."). Thus, Petitioner's arguments regarding Kulp's

10  credibility are not sufficient to provide relief under Jackson.

11       State law provides "for 'the substantive elements of the criminal offense,' but the

12  minimum amount of evidence that the Due Process Clause requires to prove the offense is purely

13  a matter of federal law." Coleman v. Johnson, 132 S. Ct. 2060, 2064 (2012) (quoting Jackson,

14  443 U.S. at 319). Here, the jury was instructed with CALCRIM No. 2302, which provided that to

15  find a defendant guilty of possession of heroin for sale, the prosecution must prove that: (1) the

16  defendant unlawfully possessed a controlled substance; (2) the defendant knew of its presence;

17  (3) the defendant knew of the substance's nature or character as a controlled substance; (4) when

18  the defendant possessed the controlled substance, she intended to sell it; (5) the controlled

19  substance was heroin as charged in Count I; and (6) the controlled substance was in a usable

20  amount. (CT 55–56).

21       From Petitioner's arguments, it appears she is challenging whether there was sufficient

22  evidence to find that she intended to sell the heroin. Viewing the record in the light most

23  favorable to the prosecution and presuming all conflicting inferences were resolved in the

24  prosecution's favor, a rational trier of fact could find beyond a reasonable doubt that Petitioner

25  possessed heroin for sale. The officer testified at trial that Petitioner had admitted to him that she

26  sold heroin. (1 RT 141–42). Kulp testified at trial that she and Klunis discussed going to see

27  Petitioner to purchase heroin. Kulp further testified that she saw Petitioner going toward the post

28  office, that Klunis also went toward the post office, and that afterwards Klunis returned with

heroin, which he did not have prior to going to the post office. (1 RT 196–97). <u>Jackson</u> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." <u>Cavazos v. Smith</u>, 132 S. Ct. 2, 4 (2011) (per curiam). Under this deferential standard of judicial review, the Court finds that a rational trier of fact could find the essential elements of possession of heroin for sale beyond a reasonable doubt. Accordingly, Petitioner is not entitled to habeas relief on her sixth claim and it must be denied.

**G.  Certificate of Appealability**

Having found that Petitioner is not entitled to habeas relief, the Court now turns to the question of whether a certificate of appealability should issue. <u>See</u> Rule 11, Rules Governing Section 2254 Cases. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition on the merits, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner's federal habeas corpus petition should be denied debatable or wrong, or that the issues presented are deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Therefore, the Court declines to issue a certificate of appealability.

## V.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The second amended petition for writ of habeas corpus (ECF No. 26) is DENIED;

2. The Clerk of Court is DIRECTED to CLOSE the case; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **July 1, 2016**                    /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE